BERANEK, Judge.
This is an appeal by the plaintiff from an order dismissing plaintiff’s complaint with prejudice. The trial court concluded that the complaint did not state a cause of action. We affirm.
Allstate Insurance Company sued the City of Boca Raton in a five-count complaint. Generally, it was alleged that Allstate Insurance Company owned certain real property consisting of approximately 300 acres and sought to develop it into a community of approximately 1800 units. This property was located outside the boundaries of the defendant, City of Boca Raton, and Allstate had been unable to develop the property because of its inability to secure water and sewage service. All counts in the suit involved the City’s alleged improper refusal to supply water and sewer services to the Allstate property under a local Plan for Regional Water Supply promulgated by the Palm Beach County Regional Planning Board.[1]
From the allegations of the complaint, it appears that the Palm Beach County Regional Planning Board was created by Special Act of the Legislature of the State of Florida in 1965, Laws of Florida, Chapter 65-2063. This Board formulated and issued “A Plan For Regional Water Supply, Treatment and Distribution and Regional Sewage Collection, Treatment and Disposal.” This Plan was designed to promote the growth and development of water and sewage facilities within the region covered by the Palm Beach County Regional Planning Board. Generally, the Plan had the stated objectives of establishing areas of responsibility for water supply and sewage disposal, minimizing the number of treatment and disposal facilities and providing flexibility so that the Plan would be adaptable to criteria established by a Water Pollution Abatement Study. The Plan was also designed to provide adequate and efficient service and fair distribution of benefits and costs. Under the Plan, Allstate’s property was within the Boca Raton Service Area and the City of Boca Raton was the “Designated Agent” within this area.
The basic problem in this case is that Allstate seeks water and sewer services from Boca Raton to commence development, but the City has refused to do so unless Allstate will comply with certain zoning and planning ordinances of the City. These include (1) restrictions on density, (2) capability of furnishing the service from Boca’s unused capacity or planned increased capacity, (3) prior assurance that public schools are available for development and (4) approval by the voters of Boca to provide services beyond the city limits.[2] As a result, Allstate sued seeking a declaration that application of the ordinances was invalid and damages under the theory of inverse condemnation and breach of duty as agent under the Plan. Each count relied upon the duty allegedly created by the Plan. The trial court determined that the complaint did not state a cause of action and dismissed it with prejudice.
All parties concede that generally a municipal corporation has no duty or responsibility to supply services to areas outside its municipal boundaries. See Annot., 48 A.L.R.2d 1222 (1956). Here, appellant contends that the City of Boca Raton assumed the responsibility of furnishing water and sewage services to the “Boca Raton Service Area” by its approval of and participation in the Plan. Appellant also maintains that the City supplies water and sewage services to other developers without requiring compliance with City ordinance.[3]
*480 The Plan was adopted on March 9, 1972, and the City of Boca Raton accepted its designation as Agent for its particular service area on May 23, 1972. As previously indicated, the Plan was promulgated by the Palm Beach County Area Planning Board and the legislation (Section 20 of Chapter 65-2063, Laws of Florida), which created the Planning Board provides:
Section 20. Effect on local governmental units.
Nothing in this act shall be construed to diminish, supersede or change in any way, the powers, functions and jurisdiction of any local governmental unit.
Since the statute creating the Board contained this limitation, the Plan promulgated by the Board should not be construed to require the City to furnish these services outside its municipal boundaries. Clearly, the Board would not have had the authority to order Boca Raton to provide these services. Appellant seems to concede this and bases all claims for relief on the Plan to which the City was a party. The language of the Plan itself, however, is not phrased in any mandatory sense. Under the section entitled, “General Policies,” the Plan states as follows:
This Plan sjiall designate one agency in each service area to provide the service area sewage treatment facility. This agency shall make its facility available to any sub-agency in the service area under a mutually agreeable contract to provide additional treatment capacity to serve new and/or existing developments in the service area. . . . The designation as the agency or sub-agency for sewage may be withdrawn for noncompliance with the Plan. Nothing is stated or implied that the designated agency shall be required to provide collection or transmission facilities. (Emphasis supplied.)
The above makes it clear that even if the City of Boca Raton is in non-compliance with the Plan, the remedy is not to force compliance by requiring the City to provide water and sewage but instead to withdraw the agency designation from the City. Further, this provision obviously contemplates an agreement between the supplier (the Agency) and user (the sub-agency) prior to extension of service.
Under the section of the Plan specifically relating to the provision of water and sewer services to new developments in unincorporated areas, it is stated as follows:
Water and Sewage Treatment and Disposal for these New Developments shall be provided under one of the following methods listed in order of preference:
Option # 1 — By the Service Area Water and/or Sewage Treatment Facility-
Option # 2 — By an existing Interim-Sub-Agency Facility.
Option # 3 — By a new interim Sub-Agency Facility.
Under the stated options, Allstate is not precluded from obtaining water and sewage service merely because of its inability to presently obtain same from the City of Boca Raton. Allstate may seek the services from suppliers under the other two options.
The Plan is 16 pages long and we find little in it to support the 21 pages of the amended complaint. Generally, the Plan seems to be designed so that entities desiring water and sewer services will know which supplier to contact first in a specific service area. If the designated agent in a particular area cannot supply the services needed, then the entity seeking those services is free to obtain the services from a second or third option designated under the Plan. The Plan thus ranks the suppliers within the service areas setting priorities.
In addition, appellant has totally failed to even comment upon Part IV of the Plan entitled, “IMPLEMENTATION.” This portion of the Plan is as follows:
*481 IV.
IMPLEMENTATION
THE DEPARTMENT OR THE DULY AUTHORIZED AND APPOINTED DESIGNEE OF THE DEPARTMENT ACTING IN BEHALF OF THE DEPARTMENT SHALL:
A) MAKE THE DETERMINATION AS TO WHICH OF THE OPTIONS AND/OR DESIGNATIONS CONTAINED HEREIN SHALL APPLY IN ANY GIVEN CIRCUMSTANCE.
B) MAKE SUCH RULES AND REGULATIONS, INCLUDING APPEALS THEREFROM TO THE DEPARTMENT AS NECESSARY TO IMPLEMENT THIS PLAN AND SUBSEQUENTLY ENFORCE THIS PLAN.
C) CONSULT WITH, AND REVIEW AND CONSIDER THE RECOMMENDATIONS OF THE COMMISSION, THE AGENCY, THE LOCAL HEALTH DEPARTMENT AND THE BOARD IN THE IMPLEMENTATION OF THIS PLAN AND THE WATER POLLUTION ABATEMENT STUDY. (Emphasis supplied).
The “Department” is defined by the Plan as the Florida Department of Pollution Control, a state agency. Under the Plan, this Department is to make the determination as to which of the various options shall apply in any given circumstance. In the instant case, the complaint failed to make any allegation that Allstate sought a determination from the Department as to which option should apply. Further, although not specifically addressed in the motion to dismiss, we note there is no allegation in the complaint as to the exhaustion of administrative remedies by an appeal pursuant to the implementation procedures quoted above.
We decide the trial court was correct in determining that the designation of the City of Boca Raton as an “Agent” under the Plan did not place an absolute duty upon the City of Boca Raton to supply water and sewage to landowners outside the boundaries of the City. The Plan clearly contemplated the possibility that such services would be supplied by the City but just as clearly the Plan anticipated that such services would only be supplied if mutually agreeable between the parties. Allstate argues it is illegal for the City to require an applicant for water and sewage to fulfill any conditions whatsoever and contends that City ordinances have no effect outside City boundaries and thus cannot affect this property. Allstate maintains that by becoming the designated Agent for the Boca Raton Service Area under the Plan, the City has assumed the absolute duty and responsibility of providing water and sewage services. We reject this position and find that the Plan attached to the plaintiff’s complaint as Exhibit A did not place a duty upon the City to supply water and sewage under the circumstances alleged.
The trial court thus correctly determined that the Plan in question did not place a mandatory duty on the part of the City to supply the requested services. Furthermore, the complaint does not allege that Allstate has complied with the Plan by seeking a determination from the Department of Pollution Control as to which option should apply.
Under the circumstances of this case,[4] we conclude the complaint fails to state a cause of action and the dismissal with prejudice below is thus affirmed.
AFFIRMED.
HERSEY and GLICKSTEIN, JJ., concur.

.Allstate became the owner of the property by virtue of a quit claim deed given in lieu of foreclosure. The prior owner, a limited partnership, sought water/sewer confirmation from the City, which was refused. Because of this refusal, the limited partnership was unable to begin development and conveyed the property to Allstate in lieu of foreclosure in 1976.

. This ordinance requiring voter approval was not passed till long after the City’s denial of appellant’s request and obviously played no part in that denial. We do not address the legality of this voter approval ordinance.

. This allegation regarding other developers is not specific as to time. Reference to appellant’s brief leads us to conclude that appellant is not asserting the City is applying its ordi *480 nances only to Allstate while not applying these ordinances to other landowners whose applications for services occurred subsequent to the effective date of the ordinances. We construe this allegation as stating that the City is continuing services extended prior to the ordinances without requiring compliance in a retroactive fashion.

. We are aware from the briefs of the parties of numerous cases dealing with the general issue of the extension of municipal services beyond the limits of municipal boundaries. In this respect, both parties have thoroughly discussed and relied upon Edris v. Sebring Utilities Corporation, 237 So.2d 585 (Fla.2d DCA 1970), cert. denied, 240 So.2d 643 (Fla.1970); Village of Virginia Gardens v. City of Miami Springs, 171 So.2d 199 (Fla.3d DCA 1965); City of Indian Harbour Beach v. City of Melbourne, 265 So.2d 422 (Fla.4th DCA 1972), and numerous other out of state cases, many of which are collected in Annot., 48 A.L.R.2d 1222 (1956). We have not relied upon these authorities because the complaint herein was based solely upon the specific Plan attached to the complaint.