Mr. John K. Renke, II City Attorney City of New Port Richey 320 E. Main Street New Port Richey, Florida 33552-2576
Dear Mr. Renke:
This is in response to your request for an opinion on questions which may be substantially restated as follows:
 IF AN OWNER OF PROPERTY CONTIGUOUS TO A MUNICIPALITY DESIRES TO CONNECT TO THE MUNICIPALITY'S WATER AND SEWER SYSTEM, MAY A MUNICIPALITY REQUIRE AS A CONDITION PRECEDENT TO SUPPLYING SUCH SERVICES THAT THE PROPERTY BE ANNEXED INTO THE MUNICIPALITY?
According to information supplied to this office, the owner of vacant property, which is located outside of, but contiguous to, the City of New Port Richey, desires to develop his land and install connections to the city's water and sewer system. The property, apparently, is not currently being supplied with such water and sewer service. The property owner does not, however, wish to have the property annexed. You have, therefore, inquired as to whether the city is obligated to supply water and sewer services to such property or whether the city may require the owner to agree to have the property annexed into the municipality before supplying such services.
While municipalities have been granted broad power to enable them to conduct municipal government, s. 2(b), Art. VIII, State Const., and Part I of Ch. 166, F.S., such power is not unlimited. Section 2(c), Art. VIII, State Const., provides that "[m]unicipal annexation of unincorporated territory . . . and exercise of extra-territorial powers by municipalities shall be as provided by general or special law." See, s. 166.021(3)(a), F.S., providing that municipalities have the power to enact legislation on any subject matter upon which the State Legislature may act except "[t]he subjects of annexation . . . and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution. . . ." Chapter 180, F.S., authorizes municipalities to execute their corporate powers and to, inter alia, provide for water supply and sewage collection and disposal systems outside of their corporate limits and to contract for the construction or use of the same with private companies (as defined by s. 180.05). Pursuant to s. 180.02(3), a municipality, subject to certain restrictions, may create a zone or area by ordinance outside of its corporate limits and prescribe reasonable regulations requiring all persons or corporations living or transacting business within such area to connect, when available, with any sewerage system constructed and operated under Ch. 180. Section 180.19(1) allows a municipality, which constructs public works as authorized by Ch. 180, to permit any other municipality and the owners or association of owners of lots or lands outside of its corporate limits or within the limits of any other municipality, to connect with or use the utilities mentioned in Ch. 180 upon such terms and conditions as are agreeable to such municipalities, and the owners or association of owners of such outside lots or lands. Such authorization is discretionary and imposes no obligation upon a municipality to supply such services beyond its boundaries. See, Allstate Insurance Company v. City of Boca Raton, 387 So.2d 478, 479 (4 D.C.A. Fla., 1980) ("generally a municipal corporation has no duty or responsibility to supply [water and sewer] services to areas outside its municipal boundaries"). See also, City of Indian Harbour Beach v. City of Melbourne, 265 So.2d 422 (4 D.C.A.Fla., 1972) (in absence of franchise or other contractual arrangement, city furnishing water was under no obligation and could not be made to connect water services to neighboring city); cf., AGO 82-1.
I am unaware of any charter, statutory provision or any contractual agreement, and none has been drawn to my attention, which would require the City of New Port Richey to furnish municipal water and sewer service to property which is contiguous to said municipality's boundaries. Therefore, I am of the opinion that a municipality is not required to provide water and sewer services to contiguous property outside the municipality's boundaries but may limit provision of such services to property within its municipal boundaries. Accordingly, it is my opinion that a municipality may refuse to provide such municipal services to unincorporated property until such time as the property is incorporated into the municipality.
It must be recognized, however, that municipal annexation is governed by the provisions of the Municipal Annexation or Contraction Act, ss. 171.011-171.091, F.S. (hereafter the Act). The purposes of the Act are to insure sound urban development and accommodation to growth, set forth uniform legislative standards throughout the state for adjustment of municipal boundaries, insure the efficient provision of urban services to areas that have become urban in character, and insure that areas are not annexed unless municipal services can be provided to such areas. Section 171.021, F.S. Any municipality may annex contiguous, compact, unincorporated territory in the manner established in the Act. See, s. 171.0413, F.S. The annexation procedure is declared to be a uniform method for the adoption of an ordinance of annexation by the governing body of any municipality "except as otherwise provided in this law." Section 171.0413(4). This office has construed the foregoing proviso as referring to s. 171.044, F.S., which provides for an alternative procedure for voluntary annexation without a referendum. See, AGO 81-22 and Capella v. City of Gainesville, 377 So.2d 658 (Fla. 1979). The provisions of any special act or municipal charter relating to the adjusting of municipal boundaries in effect on October 1, 1974, are repealed by s. 171.022(2), F.S., except as otherwise provided in Ch. 171. See, s. 171.0413(4), which provides, inter alia, that all existing provisions of special laws which establish municipal annexation procedures are thereby repealed except that any provisions of special laws which prohibit annexation of territory that is separated from the annexing municipality by a body of water or watercourse shall not be repealed. Thus, Ch. 171 establishes the exclusive method by which municipal annexation may be accomplished. SCA Services of Florida, Inc. v. City of Tallahassee, 418 So.2d 1148 (1 D.C.A.Fla., 1982); 12 Fla.Jur.2d Counties and Municipal Corporations s. 54. See, AGO's 80-84 and 81-22. And see, McGeary v. Dade County, 342 So.2d 549 (3 D.C.A.Fla., 1977) (power to extend municipal boundaries must be exercised in strict accordance with statutes conferring such power). See also, AGO 77-133 ("a municipality is precluded [absent express general or special law authorization] from enacting any annexation procedures contrary to Ch. 171, F.S., irrespective of whether such procedures would be less stringent or more stringent than those provided in Ch. 171").
Prior to commencing the annexation procedures mandated by s.171.0413, F.S., the governing body of the municipality must prepare a report setting forth, inter alia, plans to provide urban services to any area to be annexed. Section 171.042(1), F.S. Such plans must provide for extending urban services to the area under consideration on substantially the same basis as such services are provided to the municipality prior to annexation. Section171.042(1)(c)1. The plans must additionally provide for extending water and sewer services to the area to be annexed so that "property owners in the area to be annexed will be able to secure public water and sewer service according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions." Section 171.042(1)(c)2. See also, s. 171.042(1)(c)3. It thus becomes evident that the requirements of the Act have been made mandatory by the Legislature at the local level and hence, do not vest in any municipality any discretion whatsoever to change, alter or impose conditions upon the provisions of the Act. Cf., 85-19. Accordingly, a municipality annexing property must operate in accordance with, and is limited by, the terms and conditions specified in Ch. 171.
In sum, it is my opinion that a municipality is not required to supply water to property outside its municipal boundaries, but may limit provision of such services to property within its municipal boundaries. Thus a municipality may refuse to provide such municipal services to unincorporated property until such time as the property is annexed into the municipality; any annexation of property, however, must be in accordance with the provisions of Ch. 171, F.S.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General